IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| NOAH A. LARCHICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No.: 4:18-cv-3019 |
| ) | |
| SWIFT TRANSPORTATION CO. OF ) | |
| ARIZONA, LLC, ) | |
| a Delaware limited liability company, ) | |
| ) | |
| and ) | |
| ) | |
| KNIGHT-SWIFT TRANSPORTATION ) | |
| HOLDINGS, INC., ) | |
| a Delaware corporation, ) | |
| ) | |
| and ) | |
| ) | |
| ESTEBAN D. BAUTISTA, ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT**

COMES NOW Plaintiff, Noah A. Larchick, by and through counsel, and for his Complaint against the above named Defendants, respectfully states and alleges as follows:

**The Parties**

1. Plaintiff, Noah A. Larchick is and was at all times herein relevant a citizen and resident of the State of Nebraska, residing in North Platte, Nebraska.

2. Defendant, Swift Transportation Co. of Arizona, LLC is a foreign limited liability company organized and existing according to law, with its principal place of business at 2200 South 75th Avenue, Phoenix, Arizona 85043. Swift Transportation Co. of Arizona, LLC operates a nationwide trucking business, including routine hauling of cargo on interstate runs in and through

1

the State of Nebraska. Swift Transportation Co. of Arizona, LLC can be served through its registered agent, National Registered Agents, Inc., 3800 N. Central Avenue, Suite 460, Phoenix, Arizona 85012.

3.  Defendant Knight-Swift Transportation Holdings, Inc. is a foreign corporation organized and existing according to law, with its principal place of business at 2200 South 75th Avenue, Phoenix, Arizona 85043. In part Knight-Swift Transportation Holdings, Inc. operates a nationwide trucking business, including routine hauling of cargo on interstate runs in and through the State of Nebraska. Knight-Swift Transportation Holdings, Inc. can be served through its registered agent, National Registered Agents, Inc., 3800 N. Central Avenue, Suite 460, Phoenix, Arizona 85012.

4.  Defendants Swift Transportation Co. of Arizona, LLC and Knight-Swift Transportation Holdings, Inc. will collectively be referred to hereinafter as Defendant "SWIFT."

5.  Defendant Esteban D. Bautista (hereinafter referred to as "Defendant Bautista") is a resident of the State of Washington and upon information and belief can be served at his home address of 354 North Shore Court, Apt. A, Manson, Washington 98831.

**Jurisdiction and Venue**

6.  This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 because of diversity of citizenship of the parties.

7.  The amount in controversy exceeds $75,000.

8.  The events giving rise to Plaintiff's cause of action occurred within this federal judicial district and venue is proper pursuant to 28 U.S.C. § 1391(b)(2).

**Facts Regarding Defendant SWIFT in Interstate Commerce**

9.  The transportation of goods in interstate commerce constitutes an ultra-hazardous

activity that presents substantial dangers to the driving public when not done safely, properly and with due caution. Accordingly, there are a number of federal regulations, state statutes, industry standards and local ordinances that govern the qualification, training and retention of professional tractor trailer drivers, the proper maintenance and equipment for commercial motor vehicles, and the safe operation of motor carriers, commercial motor vehicles and professional truck drivers.

10. At all times material hereto, Defendant SWIFT was an authorized interstate motor carrier authorized to transport goods in interstate commerce and in and through the State of Nebraska for profit pursuant to one or more permits issued by the Interstate Commerce Commission, or by the Unites States Department of Transportation ("USDOT"), or both. In addition, Defendant SWIFT was a USDOT approved and authorized broker of goods in interstate commerce. Accordingly, Defendant SWIFT was subject to all state and federal laws, statutes, regulations and industry standards governing the hiring of safe and qualified commercial drivers, the safe maintenance and operation of commercial motor vehicles, and the safe brokering of goods in interstate commerce, including without limitation Nebraska's traffic laws and the Federal Motor Carrier Safety Regulations ("FMCSRs") set forth in 49 C.F.R. parts 371-397.

11. As part of its regular business, Defendant SWIFT utilizes commercial motor vehicles to transport goods in interstate commerce. As part of its usual and customary business, Defendant SWIFT ships such goods daily in interstate commerce to its customers and the ultimate purchasers of goods. Accordingly, Defendant SWIFT is regularly engaged in a commercial enterprise that involves the use of motor carriers, commercial motor vehicles and licenses commercial motor vehicle drivers as an integral part of its business. As a result, at all times relevant Defendant SWIFT had a duty and obligation to the driving public to exercise reasonable care to select safe, competent and conscientious motor carriers, commercial motor vehicles and

professional drivers to deliver those goods to end consumers.

12. In return for the privilege to operate commercial motor vehicles on the public highways transporting goods in interstate commerce, motor carriers and brokers like Defendant SWIFT must make certain safety related certifications and verifications to the United States Department of Transportation. In order to obtain operating authority and get a USDOT Number, Defendant SWIFT had to submit a Form OP-1 Application for Motor Property Carrier and Broker Authority. Defendant SWIFT had to submit a similar application with the same certifications to obtain authority to operate as a broker of goods in interstate commerce.

13. Each Form OP-1 submitted contained a "Safety Certification", certifying to the Federal Motor Carrier Safety Administration ("FMCSA") that Defendant SWIFT has access to and is familiar with all applicable U.S. DOT regulations relating to the safe operation of commercial motor vehicles and that Defendant SWIFT will comply with the FMCSRs at all times while operating a commercial motor vehicle in the United States.

14. More specifically, each FORM OP-1 submitted contained a "Safety Certification" certifying to the FMCSA that, at a minimum, Defendant SWIFT:

(a) had and will have in place a system and an individual responsible for ensuring overall compliance with the FMCSRs;

(b) can produce a copy of the FMCSRs;

(c) had and will have prepared and maintain an accident register;

(d) had and will have in place a driver safety training/orientation program;

(e) is familiar with D.O.T. regulations governing driver qualifications and had and will have in place a system for overseeing driver qualification requirements;

(f) had and will have in place policies and procedures consistent with D.O.T.

regulations governing driving and operational safety of motor vehicles, including drivers' hours of service and vehicle inspection, repair and maintenance;

(g) is familiar with, and had and will have in place a system for complying with all USDOT regulations governing alcohol and controlled substances testing requirements; and

(h) must comply with all pertinent Federal, State, local and tribal statutory and regulatory requirements when operating within the United States.

15. Representatives of Defendant SWIFT swore under penalty of perjury to comply with the above "Safety Certifications."

16. At all times relevant, Defendant Bautista claimed to be a Class A licensed commercial vehicle operator. On September 10, 2015 Defendant Bautista was driving a tractor truck owned and/or leased by Defendant SWIFT, bearing VIN #3HSDJAPR9EN022724, and was pulling a long cargo trailer (hereinafter the tractor and trailer will be collectively referred to as the "Semi") in interstate commerce for Defendant SWIFT. Accordingly, Defendant Bautista was subject to all state and federal laws, statues, regulations and industry standards governing the safe maintenance and operation of commercial motor vehicles, including without limitation Nebraska traffic statutes and the FMCSRs set forth in 49 C.F.R. parts 371-397.

17. At all times relevant, Defendant Bautista was employed by and/or contracted to perform services for Defendant SWIFT in its affairs or under Defendant SWIFT's U.S. DOT operating authority and was subject to Defendant SWIFT's control or right to control, such that Defendant SWIFT is considered his actual and statutory employer and therefore vicariously liable for Defendant Bautista's negligence.

**Facts Regarding the Crash**

18. On September 10, 2015 at about 5:50 a.m., Plaintiff Noah A. Larchick was driving a tractor trailer truck westbound on Interstate I-80 in Lincoln County, Nebraska working in the course and scope of his employment with Cash-Wa Distributing. Plaintiff was driving within the speed limit on Interstate I-80 when he suddenly observed the Semi overturned on its side blocking both westbound lanes of Interstate I-80. Plaintiff immediately reduced his speed but collision with the overturned Semi was unavoidable because it was blocking both westbound lanes. After striking the large overturned Semi, Plaintiff's tractor trailer truck entered the ditch on the north side of Interstate I-80 and rolled over on its right side.

19. A short time prior to this violent crash, upon information and belief Defendant Bautista had fallen asleep and had lost control of the Semi. When he attempted to gain control over the Semi and re-enter the westbound lanes of Interstate I-80, Defendant Bautista caused the Semi to overturn and come to a rest with the underside facing and completely blocking oncoming westbound traffic. Upon information and belief Plaintiff was the first westbound vehicle to unknowingly drive into this dangerous situation on Interstate I-80.

20. Defendant Bautista admitted to the Nebraska State Patrol officer that he had fallen asleep, lost control of the vehicle and overcorrected in an attempt to get back onto the westbound lanes of Interstate I-80, causing the Semi to overturn and block the westbound lanes.

**COUNT I**
**Negligence – Defendant Esteban Bautista**

21. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if the same were set forth verbatim herein.

22. At all times relevant, Defendant Bautista had non-delegable duties to operate the

Semi in a reasonable and safe manner and to abide by all state and federal laws and industry standards governing the safe operation of commercial motor vehicles, including without limitation Nebraska traffic laws and the FMCSRs set forth in C.F.R. parts 371-397.

23. Additionally, Defendant Bautista had a duty to maintain a proper lookout, to maintain a safe and proper speed under the circumstances, to reduce speed to avoid a collision, to stay awake, and to maintain control of the Semi to avoid a rollover or collision or leaving the roadway.

24. Defendant Bautista also had a duty to comply with the company safety policies, procedures, and training governing the safe operation and maintenance of commercial motor vehicles from Defendant SWIFT.

25. Defendant Bautista breached those duties, most of which were non-delegable, in one or more of, but not limited to, the following was by:

(a) operating the Semi in a negligent and unsafe manner;

(b) failing to keep a proper lookout while operating the Semi;

(c) falling asleep while driving the Semi;

(d) failing to drive defensively;

(e) driving the Semi while distracted;

(f) failing to adhere to safe driving principles expected of professional truck drivers with commercial driver's licenses;

(g) failing to take appropriate action when he woke up from falling asleep;

(h) failing to maintain control of the Semi to keep traveling on the roadway and avoiding a rollover;

(i) failing to keep control of the Semi by attempting to re-enter the traveling lanes from

        a grassy median in an unsafe manner and under unsafe circumstances;

(j) driving the Semi while fatigued and thereby failing to operate the Semi and make decisions with alertness;

(k) driving the Semi while being distracted and therefore not able to react in a safe and timely manner;

(l) driving the Semi while using a wireless communication device, texting and/or using a hand-held mobile phone in violation of Nebraska law and 49 C.F.R. § 392.80 and § 392.82; and/or

(m) failing to operate the Semi in a safe and prudent manner in view of the conditions that existed at the time of the crash on September 10, 2015.

26. Defendant Bautista negligently breached the duties he owed to the driving public that were exposed to his actions, including Plaintiff Noah A. Larchick, and violated laws that were intended to protect the citizens of Nebraska and other road users like the Plaintiff.

27. As a direct and proximate result of the negligence of Defendant Bautista, Plaintiff Noah A. Larchick has suffered severe, permanent injuries, specifically including but not limited to his head, brain and spine with a diagnosed traumatic brain injury resulting in Plaintiff suffering great bodily, physical, emotional and psychological pain and damages, as well as loss of enjoyment of life, and Plaintiff will continue to suffer such pain, psychological and cognitive deficits and disability in the future.

28. As a direct and proximate result of the negligence of Defendant Bautista, Plaintiff Noah A. Larchick has sought and received medical, hospital, surgical, rehabilitative and therapeutic care and treatment and will require additional care and treatment in the future. Plaintiff and has incurred expenses for his medical, hospital, surgical, rehabilitative and therapeutic care

and treatment and will incur such additional expenses in the future.

29.    As a direct and proximate result of the negligence of Defendant Bautista, Plaintiff Noah A. Larchick has sustained a past wage loss and an impairment of his earning capacity, both past and future, and a loss of fringe benefits of employment, both past and future.

WHEREFORE, Plaintiff Noah A. Larchick prays for judgment of and from Defendant Esteban D. Bautista under Count I of his Complaint for such general and special damages as he is entitled to recover under law in excess of seventy five thousand dollars ($75,000.00), together with pre-judgment interest and post-judgment interest on the total judgment rendered herein, costs of suit, and such other and further relief, both general and specific, at law or in equity, which he may be justly entitled to receive, whether specifically prayed for or not.

## COUNT II
### Active Negligence – Defendant SWIFT

30.    Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if the same were set forth verbatim herein.

31.    Defendant SWIFT had a duty to ensure that its drivers and vehicles were reasonably safe and complied with all laws, regulations and industry standards concerning the safe operation of commercial motor vehicles in interstate commerce.

32.    Upon information and belief, Defendant SWIFT failed in the above mentioned duties and was therefore negligent in one or more of, but not limited to, the following ways:

(a)    prior to hiring, selecting, or otherwise contracting with Defendant Bautista, failing to conduct reasonable due diligence, or to retain a competent third party to conduct due diligence, into the safety record, driving history, training, experience and licensure of Defendant Bautista;

(b)     by negligently hiring, selecting, contracting or otherwise engaging defendant Bautista to transport its goods in interstate commerce in light of information that was known or should have been known to Defendant SWIFT, including his safety record;

(c)     failing to ensure that Defendant Bautista had the proper training and experience to inspect and operate the Semi in a reasonably safe manner for a professional truck driver;

(d)     failing to properly train and instruct Defendant Bautista on safe driving;

(e)     failing to verify that Defendant Bautista operated the Semi in a reasonably safe manner and abided by all laws governing the safe operation of commercial motor vehicles;

(f)     negligently supervising Defendant Bautista;

(g)     negligently retaining Defendant Bautista;

(h)     negligently entrusting the Semi, a dangerous instrumentality, to an incompetent, dangerous or unqualified driver;

(i)     habitually disregarding state and federal laws and regulations and industry standards governing the safe hiring, training and retention of tractor trailer drivers, the safe operation of a motor carrier transporting goods in interstate commerce, and the safe operation of commercial motor vehicles, which created a zone and culture of danger that constituted a dangerous mode of operation that could be reasonably anticipated to cause injury and death to the traveling public and created a danger to all motorists exposed to its unsafe commercial motor vehicle drivers like Defendant Bautista; and/or

(j)  having a negligent mode of operation and poor safety culture that created danger to all motorists exposed to its commercial vehicle drivers.

33. Defendant SWIFT negligently breached the duties owed to the driving public, including to Plaintiff Noah A. Larchick, and violated laws that were intended to protect the citizens of Nebraska and other users of the interstate highway system in Nebraska like Plaintiff.

34. As a direct and proximate result of the negligence of Defendant SWIFT, Plaintiff Noah A. Larchick has suffered severe, permanent injuries, specifically including but not limited to his head, brain and spine with a diagnosed traumatic brain injury resulting in Plaintiff suffering great bodily, physical, emotional and psychological pain and damages, as well as loss of enjoyment of life, and Plaintiff will continue to suffer such pain, psychological and cognitive deficits, and disability in the future.

35. As a direct and proximate result of the negligence of Defendant SWIFT, Plaintiff Noah A. Larchick has sought and received medical, hospital, surgical, rehabilitative and therapeutic care and treatment and will require additional care and treatment in the future. Plaintiff and has incurred expenses for his medical, hospital, surgical, rehabilitative and therapeutic care and treatment and will incur such additional expenses in the future.

36. As a direct and proximate result of the negligence of Defendant SWIFT, Plaintiff Noah A. Larchick has sustained a past wage loss and an impairment of his earning capacity, both past and future, and a loss of fringe benefits of employment, both past and future.

WHEREFORE, Plaintiff Noah A. Larchick prays for judgment of and from Defendant SWIFT under Count II of his Complaint for such general and special damages as he is entitled to recover under law in excess of seventy five thousand dollars ($75,000.00), together with pre-judgment interest and post-judgment interest on the total judgment rendered herein, costs of

suit, and such other and further relief, both general and specific, at law or in equity, which he may be justly entitled to receive, whether specifically prayed for or not.

## COUNT III
### Passive Negligence – Defendant SWIFT

37. Plaintiff re-alleges and incorporates the allegations contained in the above paragraphs as if the same were set forth verbatim herein.

38. At all times relevant, Defendant Bautista was Defendant SWIFT's agent, employee, servant and/or independent contractor acting within the course and scope of his agency or employment, under the direct control and for the benefit of Defendant SWIFT.

39. Therefore, Defendant SWIFT is vicariously liable for the negligence of Defendant Bautista.

40. As a direct and proximate result of Defendant SWIFT's vicarious liability and Defendant Bautista's active negligence, Plaintiff Noah A. Larchick has suffered severe, permanent injuries, specifically including but not limited to his head, brain and spine with a diagnosed traumatic brain injury resulting in Plaintiff suffering great bodily, physical, emotional and psychological pain and damages, as well as loss of enjoyment of life, and Plaintiff will continue to suffer such pain, psychological and cognitive deficits, and disability in the future.

41. As a direct and proximate result of Defendant SWIFT's vicarious liability and Defendant Bautista's active negligence, Plaintiff Noah A. Larchick has sought and received medical, hospital, surgical, rehabilitative and therapeutic care and treatment and will require additional care and treatment in the future. Plaintiff and has incurred expenses for his medical, hospital, surgical, rehabilitative and therapeutic care and treatment and will incur such additional expenses in the future.

42. As a direct and proximate result of Defendant SWIFT's vicarious liability and Defendant Bautista's active negligence, Plaintiff Noah A. Larchick has sustained a past wage loss and an impairment of his earning capacity, both past and future, and a loss of fringe benefits of employment, both past and future.

WHEREFORE, Plaintiff Noah A. Larchick prays for judgment of and from Defendant SWIFT under Count III of his Complaint for such general and special damages as he is entitled to recover under law in excess of seventy five thousand dollars ($75,000.00), together with pre-judgment interest and post-judgment interest on the total judgment rendered herein, costs of suit, and such other and further relief, both general and specific, at law or in equity, which he may be justly entitled to receive, whether specifically prayed for or not.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all Counts.

Respectfully submitted,

CHOD LAW, LLC

/s/ *Jeffrey E. Chod*
Jeffrey E. Chod
P.O. Box 17727
Denver, CO 80217-7727
Telephone: (314) 541-5862
Facsimile: (719) 470-2244
E-Mail: jchod@chodlawfirm.com

**ATTORNEY FOR PLAINTIFF**